DON KING PRODUCTIONS, INC., Plaintiff

v.

Jorge COLON–ROSARIO, et al., Defendants.

Civil No. 07–1316(SEC).

United States District Court, D. Puerto Rico.

June 19, 2008.

Glenn Carl James–Hernandez, James Law Offices, Guaynabo, PR, John E. Mudd, John E. Mudd Law Office, San Juan, PR, for Plaintiff.

Nydia Gonzalez–Ortiz, Santiago & Gonzalez Law Office, Yauco, PR, Anthony E. Keller–Charneco, Anthony Keller Law Office, Mayaguez, PR, Jose A. Hernandez–Mayoral, Hernandez Mayoral Law Office, San Juan, PR, Mauricio Hernandez–Arroyo, Mauricio Hernandez Arroyo Law Office, Jose Rafael Santiago–Pereles, Santiago Pereles & Collazo, PSC, Ponce, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Pending before the Court is Co–Defendants Edgardo Arlequín's and Lori A. Torres' (hereinafter collectively referred to as the Arlequín Defendants) Motion to Dismiss for Improper Joinder under Fed. R.Civ.P. 21 (Docket # 19), and Plaintiff's opposition thereto (Docket # 22). After reviewing the filings and the applicable law, the Arlequín Defendants' motion (Docket # 24) will be **GRANTED**.

### Factual Background:

Plaintiff, Don King Productions, Inc. (hereinafter DKPI), is a corporation organized under the laws of the Delaware, with its principal office and place of business in Florida. DKPI alleges to be the producer and copyright holder of the closed-circuit telecast of the following events: the April 17–18, 2004 Championship boxing match "Chris Byrd v. Andrew Golota" and the preliminary bouts, (hereinafter the Byrd–Golota match); the October 2–3, 2004 Championship boxing match "Felix Tito Trinidad v. Ricardo Mayorga" (hereinafter the Trinidad–Mayorga match); and the December 14, 2003 Championship boxing match "Bernard Hopkins v. Williams Joppy" (hereinafter Hopkins–Joppy match)(hereinafter collectively referred to as "the Events") at closed-circuit locations such as theaters and bars, among others. DKPI further alleges that it produced, marketed and distributed the Events for commercial gain and, therefore, for this purpose, it contracted with various establishments (hereinafter the authorized establishments) throughout Puerto Rico for them to broadcast the Events in exchange for a fee. DKPI filed the instant complaint against thirty-seven (37) Defendants alleging that each of them willfully intercepted and/or received the interstate communication of any of the Events without seeking permission to do so or paying any fees to DKPI, in violation of its license for the exclusive exhibition of the Events. The Complaint seeks a remedy pursuant to the Federal Communications Act of 1934, as amended, (hereinafter the FCA), specifically 47 U.S.C.A. §§ 605 & 553.

### Applicable Law and Analysis

The Arlequín Defendants moved to dismiss the complaint against them, pursuant to Fed.R.Civ.P. 21, arguing that they (and

the majority of the 37 Defendants) were misjoined in the Complaint in violation of Fed.R.Civ.P. 20. They argue that DKPI "has been avoiding paying the proper filing fees impermissibly bundling defendants who have no connection whatsoever ... each [of which] have their particular circumstances and may have a different defense." Docket # 19. Let's see.

■ DKPI alleges in its complaint that the closed-circuit broadcast of the Events was not intended for the use of the general public but only to those who were contractually authorized by DKPI. DKPI's way to avoid the unauthorized exhibition of the Event is to *scramble* the communication so that only those with the proper decoding equipment (*i.e.* the authorized establishments) are unable to view the Event. *See,* Docket # 1, ¶ 28. DKPI further alleges that the Defendants, in violation of its rights, "intercepted, received or otherwise assisted in the unauthorized interception or receipt of the Event ... through the use of illegal decoding devices; by the manipulation of the closed-circuit system unauthorized to carry the Events in the licensing area ..." Docket # 1, ¶¶ 44–45. DKPI claims that Defendants misappropriated its licensed exhibitions "to secure financial gain, commercial advantage and to advertise their goods, products or services", *id.* at 32, and causing "substantial damage to DKPI." *Id.* at 36.

At no point does the complaint allege that Defendants acted in concert to violate the aforementioned statutes. The only link between the Defendants is that each of them purportedly violated the same statutes around the same time.

■ Fed.R.Civ.P. 20 provides that Defendants ... may be joined in one action ... if: any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences; and any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2). In other words, "[b]oth the 'transaction or occurrence' requirement and the 'common question of law or fact' requirement must be satisfied before joinder will be permitted." *See, Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.,* 67 F.R.D. 634, 636 (D.Del.1975); *see also, Philips Electronics North America Corp. v. Contec Corp.,* 220 F.R.D. 415, 417 (D.Del.2004); *Maldonado Cordero v. AT & T, et al.,* 190 F.R.D. 26, 28 (D.P.R.1999).

Usually, the second requirement, that there be a common question of law is "easily met." *DIRECTV v. Collins,* 244 F.R.D. 408, 410 (D.Oh.2007)(hereinafter *Collins* ). However, the "first requirement, respecting transactional relatedness, ... is typically thornier ... [as it is] often difficult to apply, and requires a case-by-case analysis." *Id.* In *Collins,* DirecTV filed suit against nine defendants, who "purchased pirate devices from a total of three different vendors" to intercept DirecTV's encrypted pay-per-view programming. *Collins,* 244 F.R.D. at 409. Although the "same transaction" requirement is often liberally construed, the Court in *Collins* found that

even construing the transactional relatedness element liberally, it is abundantly clear that [DirecTV's] Complaint does not meet this requirement ... [as] [t]he only similarity between the Defendants is that they allegedly intercepted the same satellite signal. There is no indication that the Defendants herein acted in concert with each other, or even that they knew each other.

*Collins,* 244 F.R.D. at 410. The Court so concluded even when DirecTV alleged that the defendants bought the unscrambling devices from the same vendors, and that it

became aware of this illegality through the same investigation. *Id.* The Court also concluded that because there was no allegation of concerted action among the defendants and there were disparate factual situations "it is reasonable to expect that each Defendant will present unique defenses." *Id.*

DKPI alleges that the same transaction requirement should be met because "all allegations, except those as to the identity of the parties, are the same." Docket # 22, p. 2. We disagree. DKPI's claims against the defendants, "arise out of different, albeit similar, facts. The only connection between them is that they each allegedly violated provisions of federal law relating to piracy of cable television." *DIRECTV v. Patel,* 2003 WL 22669031, at p. 1 (N.D.Ill.2003)(unpublished)(hereinafter *Patel*). As the *Patel* Court put it, "[t]he transactions are logically related to one another in the same way that purchases of milk from the grocery store are logically related to one another: each transaction involves a transaction in a similar good for a similar purpose. Beyond that, the similarities end." *Id.*

Because DKPI does not allege that the Defendants acted in concert, the only similarity among the Defendants is that they intercepted the signal of any of the three Events (*i.e.* the Trinidad–Mayorga fight, the Byrd–Golota fight, or the Hopkins–Joppy fight). Under these circumstances, it is very likely that Defendants will have separate defenses, and that DKPI's evidence in support of its claims against each Defendant will be different. This is true because the private investigators who witnessed Defendants' alleged unauthorized airing of the Events will necessarily be different, as they could not be in one Defendant location, and, at the same time, be in another Defendant location. Therefore, it is reasonable to conclude that DKPI would need to bring forth different evidence (*i.e.* testimony of the private investi-

gator) for each Defendant. Therefore, DKPI's convenience to bring all claims against these defendants in one action without paying fees for each defendant, is outweighed by the prejudice and delay it would put on the Court's shoulders, as well as each defendant's defense counsel.

In concluding that DKPI's complaint does not meet the "same transaction" test, we join a great number of District Courts. *See, DIRECTV v. Armellino,* 216 F.R.D. 240 (E.D.N.Y.2003)(holding that DirecTV's "claims turn on the fact-specific question of whether each defendant intercepted DirecTV's broadcasts ... [since] DirecTV does not plead any facts which indicate that there is any connection whatsoever among the various defendants. [Its] attempt to use distinct and unrelated acts by unrelated defendants as a basis for joinder is not proper."); *DIRECTV v. Boggess,* 300 F.Supp.2d 444, 449 (S.D.W.V.2004)("plaintiff's allegations amount to no more than a claim that ten unrelated defendants engaged in distinct and unrelated conduct ... too remote to meet the 'reasonably related' test."); *Movie Systems, Inc. v. Abel,* 99 F.R.D. 129, 130 (D.Minn.1983)("There is no claim that the alleged pirating of microwave signals was done other than independently by each of the 1795 defendants. An allegation of joint action is required."); *Tele–Media Co. v. Antidormi,* 179 F.R.D. 75, 76 (D.Conn.1998)(holding that the plaintiff's right to relief "arise out of the defendants' use of an altered converter in violation of the statute. In the absence of any claim that [they] conspired or acted jointly, the same transaction requirement of Rule 20, even when read [broadly] ... is plainly not satisfied"); *DIRECTV v. Loussaert,* 218 F.R.D. 639, 643 (S.D.Iowa 2003)(Although DirecTV's claims against defendants arise out of the same statute, the same transaction requirement was not met, because "each transaction represents a separate

and independent act, [as] no defendant knew of the other's transactions or purposes."); *DirecTV v. Chorba,* 2003 WL 24178469 (M.D.Penn.2003)(unpublished)(same).

Besides concluding that the same transaction test was not met in the cases above, the courts also found that the this type of "shotgun action" against many unrelated defendants, creates "unmanageable administrative problems in the clerk's office and ... unfairness, confusion and prejudice to defendants in their efforts to answer plaintiff's complaints, make responsive motions and conduct pretrial proceedings." *Abel,* 99 F.R.D. at 129–130. The *Abel* Court concluded that permitting joinder would create "insurmountable difficulties in the proper administration of the clerk's office [which] far outweigh any financial saving and convenience to plaintiff...." *Id.* at 130; *see also, Tele–Media,* 179 F.R.D. at 76 ("a single action ... [reduces] plaintiff's fees and costs. However, [it] imposes significant burdens on the Clerk's office. Each time an order is docketed in the case, the Clerk is obliged to prepare and mail a copy of the order to every defendant who has appeared *pro se* or through counsel. Thus, an endorsement order granting a defendant's motion for enlargement of time must be copied and sent to all appearing defendants.") [1]

█ Having concluded that the 37 Defendants were misjoined in the above-captioned complaint, the question arises as to what remedy is to be afforded to Defendants. Fed.R.Civ.P. 21 provides that "[m]isjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative...." Therefore, the Arlequín Defen-

dants ask that the Court dismiss without prejudice DKPI's claims against all Defendants except the first one named in the caption to the Complaint. Such request is consistent with the Rule and the interpretation given to the rule by the various courts to have addressed the issue. *See, Armellino,* 216 F.R.D. at 241 ("the Court dismisses the clams against all of the defendants, except Armellino."); *Boggess,* 300 F.Supp.2d at 450 ("The language 'parties may be dropped' essentially means that parties may be dismissed ... [therefore the Court orders] *sua sponte* ... dismissal without prejudice of all other defendants in this action except for the first named defendant."); *Abel,* 99 F.R.D. at 131 ("[a]ll defendants except the first named in each of the above entitled actions are dropped from the law suits ... if plaintiff wishes to pursue its purported actions against defendants dropped, it must make separate filings against ... each individual defendant."); *Patel,* 2003 WL 22669031 at p. 2 ("The complaint is dismissed without prejudice against all of the Defendants except for the first-named Defendant.")

### Conclusion

In light of the above discussion, the Court hereby **ORDERS** the **DISMISSAL without prejudice** of all the Defendants except for those included in judgment at Docket # 29 and the first named Defendant, Jorge Colón, d/b/a El Nuevo Paraíso. Partial Judgment will be entered accordingly. The Court notes that there are two motions pending with regards to Defendant Jorge Colón: Plaintiff's Motion for Default Judgment (Docket # 34), and Mr. Colón's Motion to Set Aside Default (Dock-

---

**1.** Although the U.S. District Court for the District of Puerto Rico has an electronic mailing system (CM/ECF) in place, it is still true that whenever a defendant appears *pro se,* which happens often in this type of cases, the Clerk must notify each order docketed to the *pro se* defendant by mail, irrespective of which party such order concerned.

et # 39). The Court will rule upon these motion in a separate Opinion and Order.

**SO ORDERED.**